**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MEGAN PASTIAN, | CASE NUMBER: 3:17-cv-252 |
| Plaintiff, | JUDGE: Rice |
| v. | MAGISTRATE JUDGE: Ovington |
| INTERNAL CREDIT SYSTEMS, INC., et al, | |
| Defendants. | |

**SUPPLEMENTAL BRIEFING IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### I. INTRODUCTION

Plaintiff Megan Pastian ("Ms. Pastian") has Article III standing to litigate each of her claims under the Fair Debt Collection Practices Act ("FDCPA"). The Sixth Circuit's recent decision in *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855 (6th Cir. 2020) does not negate this. *Buchholz*, and other penitent case law out of the Sixth Circuit, show Ms. Pastian suffered particular and concrete injuries as a result of Defendant Internal Credit Systems, Inc.'s ("ICS") reprehensible conduct. Pursuant to the Court's March 30, 2020 Order (ECF No. 61) Ms. Pastian submits this Brief in Support of her Motion for Summary Judgment. Further, Ms. Pastian respectfully resubmits her Motion for Summary Judgment against ICS (ECF No. 48).

### II. ANALYSIS

#### A. Current State of the Law on Standing.

There are three elements to Article III standing. "The plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Buchholz v. Meyer Njus Tanick, PA,*

1

946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo, Inc. v. Robbins,* 136 S. Ct. 1540, 1547 (2016).).  The Supreme Court has long held that Congress may "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."  *Id.* (citing *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 580 (1992).).  Congress acted within in its authority to do so when it enacted the FDCPA in 1978.

1. **Injury-in-Fact.**

A plaintiff must first show an injury-in-fact, which has two sub-elements, concreteness and particularization.  *Id.* (citing *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560 (1992).).  Particularization requires that the injury "must affect the plaintiff in a personal and individual way."  (Internal citations omitted.)  *Spokeo,* 136 S. Ct. at 1548.  However, particularization alone is not sufficient to establish an injury in fact.  *Id.*  "An injury in fact must also be concrete."  *Id.*

In terms of the FDCPA, the Sixth Circuit follows *Spokeo,* which recognizes statutory violations fall into two broad categories:

> (1) Where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents material risk of real harm to that concrete interest; [or] (2) where there is a "bare" procedural violations that does not meet this standard in which case a plaintiff must allege "additional harm beyond the one Congress has identified."

*Macy v. GC Servs. Ltd. P'ship,* 897 F.3d 747, 756 (6th Cir. 2018) (quoting, in part, *Spokeo* 136 S. Ct. at 1549.)  Further, "both tangible and intangible injuries," as well as a "risk of real harm" could "satisfy the requirement of concreteness."  *Id.* at 753 (quoting, in part, *Spokeo* at 1549.).  The Sixth Circuit, and district courts within the circuit, have long recognized emotional distress damages as the type of intangible damages recoverable under the FDCPA.  See *Buchholz,* 946 F.3d at 863-864 (discussing *Smith v. Reliant Grp. Debt Mgmt. Sols.,* 2018 WL 3753976, at *3

2

(E.D. Mich. Aug. 8, 2018) and *Link v. Recovery Sols. Grp., LLC,* 2018 WL 1980657, at * 5 (E.D. Mich. Apr. 27, 2018)); *Davis v. Creditors Interchange Receivable Mgmt., LLC,* 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008) (citing Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13 1988) (Section 813-Civil Liability) ("actual damages" for FDCPA violations include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress" as well as "out-of-pocket expenses."));  *Becker v. Montgomery, Lynch*, 2003 WL 23335929, at *2 (N.D.Ohio) (FDCPA permits recovery of actual damages for emotional distress); *Minick v. First Federal Credit Control, Inc*.1981 U.S. Dist. LEXIS 18622, at *3–4 (N.D.Ohio) (upholding award of actual damages for emotional distress); *Harding v. Check Processing, LLC*, No. 5:10CV2359, 2011 WL 1097642, at*2 (N.D. Ohio Mar. 22, 2011) ("While the FDCPA does not define 'actual damages,' it is commonly accepted that a prevailing plaintiff may recover for emotional distress damages.").

Moreover, a party does not need to "satisfy the elements of the tort of intentional infliction of emotional distress before the jury can find that the defendants caused them actual damages." *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 973 (N.D. Ohio 2008). The testimony of the plaintiff alone suffices to establish emotional distress damages provided that a reasonable explanation is provided about the circumstances of the injury, not mere conclusory statements. *Bach v. First Union Nat'l Bank*, 149 Fed.Appx. 354, 361 (6th Cir. 2005).

## 2. Traceability.

"The standard for establishing traceability for standing purposes is less demanding than the standard for proving tort causation."  *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855, 866.  The burden of "alleging that their injury is 'fairly traceable' to defendant's challenged

conduct is 'relatively modest[.]" *Id.* (citing Bennett v. Spears, 520 U.S. 154, 171 (1997).). Even harms that flow "indirectly from the action in question can be said to be 'fairly traceable' to the that action for standing purposes." (Internal citations omitted.) *Id.*

### 3. Redressability.

Generally, "[a]n injury is redressable if a court order can provide "substantial and meaningful relief." *Parsons v. U.S. Dept. of Justice,* 801 F.3d 701, 715 (6th Cir. 2015) (quoting *Larson v. Valente,* 456 U.S. 228, 243 (1982). However, "[c]laims for violations of procedural rights are treated uniquely under the standing inquiry. 'The person who has been accorded a procedural right to protect his concrete interest can assert that right without meeting all the normal standards for redressability and immediacy.'" *Id.* at 712 (quoting *Lujan v. Defenders of Wildlife* 504 U.S. 555, 572, n. 7.). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." (Emphasis in original.) *Id.* at (715 quoting *Larson* at 244, n. 15.). The Supreme Court has acknowledged statutory damages payable to the injured party satisfy the redressability prong. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103 (1998).

### B. Recent cases out of the Sixth Circuit.

Two recent cases out of the Sixth Circuit have muddied the standing doctrine under the FDCPA: *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855, 861 (6th Cir. 2020) and *Hagy v. Demers & Adams,* 882 F.3d 616 (6th Cir. 2018). However, there is a common thread between these cases. In *Buchholz,* the plaintiff sued a debt collector for sending a letter that was both accurate, and required under the FDCPA. In *Hagy,* the plaintiff sued a debt collector after it sent a letter that could only be interpreted as beneficial. The underlying position screams clearly

4

from the halls of the Sixth Circuit – do not sue a debt collector for communicating information that is either (1) accurate and required under the law, or (2) beneficial to a consumer. However, the minutiae of the analyses in these cases created fodder for debt collectors to challenge otherwise colorable claims. They have cast doubt on cases, including this one, where standing is not at issue. Regardless, neither of these cases drastically alter the existing case law on standing under the FDCPA. Further, even under both these cases Ms. Pastian still has standing.

1. **The impact of *Buchholz*.**

*Buchholz* involved two identical letters sent from the same law firm. 946 F.3d 855. Each letter was the initial communication from a debt collector regarding two different credit card accounts. *Id.* Each stated the communication was from a debt collector and provided contact information to either challenge or pay the debts. *Id.* The debtor did not dispute the validity of underlying debts. *Id.* Further, the debtor did not allege the content of the letters lacked proper notice, threatened improper legal action, contained incorrect information, or otherwise ran afoul of the FDCPA. *Id.* Instead, the debtor claimed the letters violated the FDCPA by giving the impression that an attorney had reviewed each account and determined the validity of the debts. *Id.* It further alleged that, given the law firm's high-volume practice, it was impossible that an attorney reviewed the accounts prior to sending the letters. *Id.* The only claim for damages was that the letters made the debtor feel anxious that he would be sued at some point in the future. *Id.* These were the facts alleged in the Complaint. *Id.* The law firm moved to dismiss. *Id.* The trial court granted that motion. The Sixth Circuit affirmed that ruling. *Id.*

In affirming the lower court's ruling, the Sixth Circuit held that the debtor lacked standing. *Id.* In dicta, the court discussed whether a bare allegation of anxiety satisfies the concreteness prong of the injury-in-fact element of standing. *Id.* at 863-865. However, the Sixth

Circuit did not rule on this issue.  *Id.* at 865 (stating "[n]evertheless, we need not decide whether a bare anxiety allegation, in the abstract, fails to satisfy the injury-in-fact requirement.  Buchholz fails to establish his Article II standing for other reasons…").  *Buchholz* does not overturn any prior binding precedent regarding standing under the FDCPA discussed above.

Ultimately, the Sixth Circuit held the debtor lacked standing for three reasons.  First, the fear of a future harm was not an injury-in-fact unless the future harm is imminent.  (Internal citations omitted.)  *Id.* at 865.  The court reasoned the fear of litigation was not impending because (1) the letter did not threaten litigation, (2) there were no other communications threatening a lawsuit, and (3) the plaintiff did not allege that he refused to pay the debt.  *Id.*  Second, the injury was self-inflicted and therefore did not satisfy the traceability requirement.  *Id.* at 866.  For this, the court reasoned that because the plaintiff did not dispute the debts his associated anxiety was not traceable to anything in the debt collection letters.  *Id.*  In other words, he only had himself to blame.  Third, the plaintiff did not allege a violation of a procedural right that Congress elevated to protect a concrete interest.  *Id.*  Here, the court considered two factors to determine whether an intangible injury is cognizable.  *Id.* at 868.  The court first looked to congressional judgment because it is "well positioned to identify intangible harm that meet minimum Article III requirements."  *Id.* (quoting *Spokeo*, 135 S. Ct. at 1550.)  The court then looked to the second factor considering whether the intangible harm is analogous to a harm recognized at common law.  *Id.*  The Sixth Circuit held the first factor weighted in favor of dismissal because the plaintiff did not allege he did not owe the debts nor did he claim that it was otherwise not legally collectable (e.g. barred due to statute of limitations or res judicata).  *Id.* at 870.  Further, the plaintiff did not allege that the letters miscalculated the debt or contained any misstatements or omissions that would could cause him to waive a procedural

right under the FDCPA. *Id.* As to the second factor, the Sixth Circuit found this too weighed in favor of dismissal because the letters did not mention litigation. *Id.* Therefore, the common law claims of malicious prosecution and intentional infliction of emotional distress were not analogous harms. *Id.*

The Sixth Circuit went through a rigorous analysis to reach an easy conclusion. Plain and simple, *Buchholz* was a bad case. It should have never been pursued. Essentially, the plaintiff sued a debt collector for sending accurate information and doing what the FDCPA required. 15 U.S.C. § 1692g requires debt collectors to send debt validation letters prior to beginning collection efforts. The debt collector did exactly that, and got sued in return. It is easy to see why the Sixth Circuit affirmed the dismissal. The concerning aspect of this bad case, is the impact it has on solid FDCPA claims, such as this lawsuit. The concurring opinion offers some insight. It provides a thorough discussion of precedent supporting that anxiety alone can be a concrete Article III injury. *Id.* at 870-875. Nevertheless, despite the majority's doubts, it did not rule that anxiety alone is insufficient. *Id.* at 865. Regardless, as discussed below, Ms. Pastian has presented more than adequate evidence that she suffered an injury-in-fact that is fairly traceable to ICS's conduct. These injuries are certainly redressable in this lawsuit.

**2. Other pertinent recent case law out of the Sixth Circuit.**

*Hagy v. Demers & Adams,* 882 F.3d 616 (6th Cir. 2018) is yet another example illustrating the Sixth Circuit's distaste for "gotcha litigation." In *Hagy,* an attorney sent a letter on behalf of his lender-client to the attorney for the plaintiffs-borrowers. 882 F.3d 616. The letter indicated the plaintiffs would not have to pay the balance of their loan and that the lender would not pursue any other remedies against the plaintiffs. *Id.* However, the letter failed to include a notice identifying the law firm as a debt collector pursuant to 15 U.S.C. § 1692e(11).

7

*Id.* Despite the letter's positive news, the plaintiffs sued the attorney. *Id.* The plaintiffs did not allege any injury, tangible or intangible. *Id.* The only issue was whether the omission of the statutorily required notice satisfied the injury-in-fact element of standing. *Id.* The Sixth Circuit held "because Congress made no effort to show how a letter like this would create a cognizable injury in fact and because we cannot see any way in which that could be the case, we must dismiss the case for lack of standing." *Id* at 623.

Similar to *Buchholz, Hagy* was a bad case. Common sense dictated the result. However, as the Sixth Circuit aptly noted "[i]t's difficult, we recognize, to identify the line between what Congress may, and may not do in creating an 'injury in fact.' Put five smart lawyers in a room, and it won't take long to appreciate the difficulty of the task at hand." *Id.*

Within months of the *Hagy* decision, the Sixth Circuit declined to extent *Hagy* in *Macy v. GC Servs. Ltd. P'ship,* 897 F.3d 747, 756 (6th Cir. 2018). *Macy* involved a class action lawsuit against a debt collection agency whose letters failed to notify debtors of their rights to contest the alleged debts in writing. 897 F.3d 747. The issue was whether this violation alone was enough to show a concrete injury without the need to allege any additional harm. *Id.* In what appears to be an about face from *Hagy,* the Sixth Circuit held the plaintiffs demonstrated a sufficient "risk of real harm" to a congressionally created interest. *Id.* at 757. The court found that the "letters present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumers statutory right to obtain verification of the debt or information regarding the original creditor." *Id.* The Sixth Circuit further held that this risk of harm was traceable to the violation because it created the possibility of an unintentional waiver of the FDCPA's debt validation rights. *Id.* To reconcile its departure from *Hagy,* the

8

court noted that *Hagy* did not conduct a risk-of-harm analysis because no risk of harm was alleged. *Id.* at 761.

At first blush, the holdings of *Hagy* and *Macy* are difficult to reconcile. The holdings seem schizophrenic. However, *Hagy* and *Macy* serve as guideposts to the well-established precedent on FDCPA standing. *Hagy* holds a simple lesson: if the communication is beneficial in all respects there is no concrete injury. *Macy* reinforces that Congress does have the authority to elevate injuries, given sound rationale. *Buchholz* is yet another incarnation of *Hagy.* It warns litigants from bringing lawsuits where a debt collector is conveying accurate information and otherwise complying with the law. The theme throughout all of these cases creates a balance. Unfortunately, the language is easily misconstrued and used to suppress claims that, prior to these cases, would have easily passed the threshold burden of standing. Nevertheless, as discussed below, Ms. Pastian has shown standing for each of her claims under the FDCPA.

### C. Ms. Pastian has standing under each of her FDCPA claims.

It is important to note, Ms. Pastian moved for summary judgment on liability and not the amount of her damages. (ECF No. 48.) ICS has not moved for summary judgment. Nor has ICS moved to dismiss Ms. Pastian's claims for lack of standing.[1] Further, *Buchholz, Hagy,* and *Macy* all dealt with the sufficiency of the plaintiffs' respective pleadings. This Court has not requested further argument based on the sufficiency of the Complaint. Further, unlike several of the cases discussed above, Ms. Pastian did not owe the underlying debt and at all times disputed its validity. Also, all of ICS's actions were in furtherance of collection of a debt. There is no

---

[1] The procedural posture of this case is unique. Because Ms. Pastian moved for summary judgment, and ICS did not, the evidence would typically be construed in a light favorable to ICS. However, because the Court has ordered the parties to brief the issue of standing, for this purpose the evidence must be viewed in a light favorable to Ms. Pastian. *Excel Energy, Inc. v. Cannelton Sales Co.,* 246 Fed. Appx. 953, 959 (6th Cir. 2007) (stating "the Court must draw all the inference in favor of the party against whom summary judgment was granted."). Regardless of the standard, Ms. Pastian's claims all pass Article III scrutiny.

9

evidence in the record that it ever communicated with Ms. Pastain for purposes other than collecting on the alleged debt or to relieve her of any alleged obligation. These facts alone distinguish this case from all of the recent Sixth Circuit's holdings on standing.

The FDCPA's purpose "is to protect consumers from a host of unfair, harassing, and deceptive collection practices." *Macy* at 756 (quoting S. Rep. No. 95-382, at 2 (1977)). To advance this goal, the FDCPA codified several specific consumer protective rights. The "language employed by Congress [creates] the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross FBL Fin. Sers., Inc.* 557 U.S. 167, 175-76 (2009). As discussed further below, the language Congress used in the specific provisions of the FDCPA created specific rights that it was well within its authority to create. The context and evidence show Ms. Pastian has standing under each of her claims.

### 1. ICS falsely implying the existence of a legal action caused Ms. Pastian an injury-in-fact.

The FDCPA prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). It also prohibits the use of any "threat to take any action that cannot legally be taken or that is not intended to be taken" and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(5) and (10). Congress clearly intended to prevent using the threat of legal proceedings, in some contexts, to deceive consumers to pay on a debt. Here, the evidence shows a sufficient risk of harm to these underlying interests. This establishes a concrete injury without the need for Ms. Pastian to prove any additional harm.

ICS admits that Lachman was not an attorney and that no legal matter was pending against Ms. Pastian. (Lachman Depo., 30:10-21.) This was a past due debt, not a lawsuit or

"legal matter."  The evidence shows ICS was actively attempting to collect on the alleged underlying debt when it left the June 6, 2017 voicemail.  ICS admits as much when Lachman testified "I wanted to make sure she knew it was serious, to call me back."  (ECF No. 48, Pg. ID # 366.)  Falsely implying the existence of a legal matter, while in active collections on an alleged debt, creates a sufficient risk of harm that the consumer will be manipulated into acting in reliance on that false assertion.  As to the second *Spokeo* factor, ICS's implication that this was a "legal matter" is analogous to malicious prosecution or abuse of process.  This is enough to satisfy the injury-in-fact element of standing.

Regardless, ICS's actions caused Ms. Pastian concrete intangible damages.  The evidence shows that "[u]pon hearing the voicemail, [Ms. Pastian] felt sick and panicked."  (ECF No. 48, Pg. ID # 439.)  Ms. Pastian thought she or her husband had gotten into "legal trouble."  (*Id.*)  This is a far different scenario than *Buchholz*.  This was not self-inflicted bare anxiety over the potential of a future harm.  Ms. Pastian's distress stemmed from the implication she was *already* in some kind of legal trouble.  Ms. Pastian's testimony directly traces the cause of this distress to the deceptive communication.  Further, a jury may award Ms. Pastian damages for this emotional distress.  Accordingly, Ms. Pastian has standing under this claim.

> **2. ICS's failure to identify itself as a debt collector is an injury-in-fact that does not require a showing of any additional harm.**

15 U.S.C. § 1692e(11) makes it a violation of the FDCPA where a debt collector fails to (1) identify itself as a debt collector, (2) notify the consumer that it is attempting to collect a debt, and (3) inform the consumer that any information obtained will be used for that purpose.  The Sixth Circuit has long recognized that subsequent communications from debt collectors that omit proper notice violate 15 U.S.C. § 1692e(11).  *Frey v. Ganwish,* 970 F.2d 1516 (6th Cir.

1992). This remains true in this case even under the recent developments to the standing doctrine. The plain language of the statute shows Congress recognized that consumers have a procedural right to know when they are communicating with debt collectors. A consumer's "right to receive [these] disclosures is not hypothetical or uncertain" and the deprivation of this information is sufficient to show standing under the FDCPA. *Myer v. Fay Servicing, LLC,* 385 F.Supp.3d 1235, 1240 (M.D. Fla. May 7, 2019) (quoting *Church v. Accretive Health, Inc.* 654 Fed. App'x 990, 994-995 (11th Cir. 2016).). Further, failure to disclose this information creates a real risk of harm that a consumer will waive protections afforded under the FDCPA. See, for example *Driesen v. RSI Enterprises, Inc.* CV-18-08140-PTC-DWL, 2009 WL 293646, at * 3 (finding that failure to affirmatively inform a consumer that it was attempting to collect a debt, and that any information could be used against the consumer, created a risk that the consumer might volunteer detrimental information.). Therefore, Ms. Pastian does not need to allege any additional harm to show standing under these claims.

Similar to the discussion above, context is key here. ICS was actively attempting to collect a debt when it violated this section of the FDCPA. Further, at all times, Ms. Pastian disputed the underlying debt. As to the June 6, 2017 voicemail, Lachman did not even identify ICS or inform Ms. Pastian that the call was in regards to an alleged debt. It is a textbook example of deception through omission. ICS was hoping to initiate communications with Ms. Pastian, and obtain information, without providing her the notice required under the law. There are numerous risks of harm that can flow from such behavior.

Juxtaposition to *Hagy* is instructive. It is the opposite situation. ICS was not providing good news to Ms. Pastian. It was contacting her in an attempt to get her to pay on a debt she disputed. Under these circumstances, Congress is well within its right to elevate this type of

12

harm. Further, the claim is analogous to common law fraud. Fraud includes omission of a material fact and reliance. Here, ICS omitted the material fact that the communication was from a debt collector. Ms. Pastian ostensibly relied on that omission when she returned the calls. This satisfies both *Spokeo* factors. Therefore, Ms. Pastian does not need to show any additional harm to have standing under these claims.

> **3. Misrepresenting the character and amount of alleged debt is an injury-in-fact that does not require the showing of any additional harm. Regardless, Ms. Pastian suffered additional damages as a result.**

15 U.S.C. § 1692e(2)(A) prohibits debt collectors from falsely representing the "character, amount or legal status of any debt." This is an easier, common sense, analysis of standing. This section gives consumers the right to receive truthful representations regarding the character and amount of a debt. When a debt collector misrepresents the amount of a debt it creates a real risk of harm that consumers will fall victim to paying amounts not owed. Further, this is analogous to a common breach of contract claim. A party cannot get more than they bargained for under the terms of the agreement. Accordingly, Ms. Pastian does not need to allege any additional harm.

Nevertheless, Ms. Pastain suffered actual damages as a result of ICS's May 31, 2017 letter. Ms. Pasitan incurred $525 in legal fees to send a debt validation letter. (ECF No. 48-2, Pg. ID # 440.) This was a direct result of the May 31, 2017 letter. Unlike *Buchholz,* Ms. Pastian disputed that she owed the debt and other amounts ICS claimed due. Hiring an attorney was necessary. ICS could not verify the amount of the debt in the collection letter. It contained unexplained charges and bogus amounts for future charges and for personal training sessions that Ms. Pastian was offered for free. (ECF No. 48, Pg. ID # 329.) The attorney fees Ms. Pastian

incurred are traceable to the false information in the collection letter. She is entitled to recover this amount, as well as other damages. Accordingly, Ms. Pastian has standing under this claim.

> **4. ICS's threat to negatively report credit information is an injury-in-fact that does not require a showing of any additional harm.**

The FDCPA prohibits the use of any threat that cannot be taken or "communicating or threatening to communicate any person's credit information which is known or should be known to be false, including the failure to communicate that disputed debt is disputed." 15 U.S.C. § 1692e(5) and (8). Courts, including the Sixth Circuit, have recognized that an inaccurate credit report produces a variety of negative effects. For example, it is "a red flag to debtor's and other creditors and anyone who runs a background or credit check, including landlords and employers." *Evans v. Portfolio Recovery Associates, LLC,* 889 F.3d 337, 345 (7th Cir. 2018) (citing *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1082 (7th Cir. 2013) quoting *Tyler v. DH Capital Mgmg.,* 736 F.3d 455, 464 (6th Cir. 2013.).). When a debt collector fails to report that a debt is disputed it creates a real risk of financial harm caused by an inaccurate credit rating. *Id.* This is sufficient to show an injury-in-fact. *Id.*

The same analysis applies to this case. Here, ICS was well aware that Ms. Pastian disputed the underlying debt. She had already filed this lawsuit. (ECF No. 48, Pg. ID #33.) Nevertheless, ICS threatened to negatively report the account. (*Id.*) ICS admits its intent of using this threat as leverage. (*Id.*) This created a real risk of financial harm to Ms. Pastian. It is irrelevant whether ICS followed through on its threats. Otherwise, a debt collector could always fall back on the position of "I didn't really mean what I said." The standing doctrine, the FDCPA, and associated case law, do not require a showing of intent. "Because the FDCPA is a strict liability statute, a debt collector's intent to deceive or mislead a consumer is irrelevant."

14

953 *Beane v. RPW Legal Services, PLLC,* 378 F. Supp.3d 948, 953 (W.D. Wash. May 6, 2019) (citing *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1176 (9th Cir. 2006)); see also *Fed. Home Loan Mtg. Corp. v. Lamar*, 503 F.3d 504, 514 (6th Cir.2007) (characterizing the FDCPA as a strict liability statute).  As to the second *Spokeo* factor, this too is analogous to abuse of process or malicious prosecution.  For standing purposes, this is sufficient to show an injury-in-fact without the need to show any additional harm.  The threat alone is enough to establish the risk.  Accordingly, Ms. Pastian has standing under this claim.

> **5.   ICS's outrageous conduct is an injury-in-fact that does not require a showing of any additional harm.  Regardless, Ms. Pastian suffered additional damages as a result.**

15 U.S.C. § 1692d(2) prohibits the "use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader."  Congress acted within its authority by providing consumers a minimal degree of protection from abusive language.  Yet again, the context is key.  Ms. Pastian testified that "Mr. Lachman then called me a "brat" and a "bitch," *because* I tried to insist that I did not owe the money."  (ECF No. 48, Pg. ID # 439, ¶ 19.)  The abusive language was not an accidental slip of profanity, such as saying "oh shit."  It was directed at Ms. Pastian because she said she did not owe the debt.  The objective purpose of using this specific language in this manner was to abuse and harass Ms. Pastian.  Under these circumstances, violation of this section is a concrete injury.  Further, this can be analogous to common law claims for defamation or intentional infliction of emotional distress.  Resorting to the use of such language is extreme and outrageous.  Therefore, Ms. Pastian does not need to show any additional harm to prove standing.

Nevertheless, the record shows Ms. Pastian suffered intangible damages as a result of ICS's outrageous conduct.  Unlike *Buchholz,* Ms. Pastian's damages go far beyond mere anxiety

15

as the result of some uncertain future action. Ms. Pastian testified that the conversation "made me anxious. I was embarrassing. I was shocked. I was upset that someone talked to me that way and they weren't very profession." (ECF No. 56, Pg. ID. # 683-684.) The evidence further showed that as a direct result of the conversation she started seeing a therapist and began taking medication for anxiety. (ECF No. 48, Pg. ID # 665-666.) Accordingly, the harm is directly traceable to ICS's conduct. A jury can determine the extent of Ms. Pasitan's damages based on this evidence. Under either analysis, Ms. Pastian has satisfied the minimal burden required to show standing.

### III. CONCLUSION

For the foregoing reasons, Ms. Pastian has shown that she has Article III standing under each of her FDCPA claims. Accordingly, Ms. Pastian resubmits her Motion for Summary Judgment previously filed. There is no genuine issue of material fact that Ms. Pastian is entitled to judgment as a matter of law as to liability under her claims. This matter should proceed to a jury to determine Ms. Pastian's full measure of damages.

Respectfully Submitted,

DOUCET GERLING CO., LPA

/s/ Andrew J. Gerling
Andrew J. Gerling (0087605)
655 Metro Place South, Suite 600
Dublin, Ohio 43017
Phone: (614) 221-9800
Fax: (818) 638-5548
Andrew@Doucet.Law
*Attorney for Plaintiff Megan Pastian*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2020, I caused this document to be electronically filed with the Clerk of Courts by using the ECF System, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt, pursuant to Fed.Civ.R.P. 5(b)(3) and Loc.R. 5.2(b):

Andrew C. Hall  (0066465)
Andrew C. Hall Law Offices
961 E. Cooke Rd.
Columbus, OH 43224
614.390.8184
achlaw@sbcglobal.net

Dennis J. Barton III (Pro Hac Vice)
The Barton Law Group, LLC.
17600 Chesterfield Airport Rd., Suite 201
Chesterfield, MO 63005
637.778.9520
dbarton@bartonlawllc.com

                                                */s/ Andrew J. Gerling*
                                                Andrew J. Gerling (0087605)